UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICHEL A. VICTOR, JR.,                    :

       Petitioner                          :

                         :

       v.                                 : CIVIL NO. 3:CV-08-1914

                         :

MICHAEL MUKASEY, et al.,                  : (Judge Kosik)

                         :

       Respondents                         :

**FILED**
**SCRANTON**

**NOV 2 5** 2008

PER _____

DEPUTY CLERK

## **M E M O R A N D U M**

Michel A. Victor ("Petitioner"), presently a detainee of the Bureau of

Immigration and Customs Enforcement ("ICE"), incarcerated at the York County

Correctional Facility, Pennsylvania, filed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2241 on October 17, 2008, seeking release from

unconstitutional detention.  For the reasons set forth below, the petition will be

granted.

## I.     **Factual Background**

Petitioner, a native and citizen of Haiti, entered the United States on or about

February 17, 1989, and was admitted as a lawful permanent resident. (Doc. 6, Ex. A.)

On March 30, 2007, ICE issued a "Notice to Appear" for removal proceedings under

section 240 of the Immigration and Nationality Act ("INA"), as amended, charging

that Petitioner was removable under section 237(a)(2)(A)(ii) for having been convicted of two crimes of moral turpitude not arising out of a single scheme of criminal misconduct.  Specifically, the convictions referred to were as follows: (1) Attempted Reckless Endangerment in the First Degree, in violation of New York State Penal Law, on or about March 4, 2003, by the Suffolk County Court, New York; and (2) False Personation, in violation of New York State Penal Law, on or about March 13, 2003 by the District Court of Suffolk County, New York.  (Doc. 1, Ex. A.)  Petitioner was taken into custody by ICE on July 5, 2007, apparently following his completion of the criminal sentence he was serving at the time.

On October 17, 2007, the Immigration Judge ("IJ") granted a motion filed by Petitioner to terminate the immigration proceedings based upon his assertion that the crimes alleged by ICE in the Notice to Appear did not involve moral turpitude.  ICE filed a motion for reconsideration on September 26, 2007, that was thereafter denied by the IJ.  On November 7, 2007, ICE filed a Notice of Appeal with the Board of Immigration Appeals ("BIA").  On January 31, 2008, the BIA affirmed the decision of the IJ, terminating the removal proceedings and ordering Petitioner released.  (Id., Ex. G.)

Petitioner was not released.  Rather, on February 6, 2008, ICE issued a new detainer/warrant and a new "Notice to Appear" for removal proceedings under section 240 of the INA charging that he was removable under section 237(a)(2)(B)(i) because

2

he was convicted after admission, on September 27, 2004, in the District Court at Suffolk County, New York for the offense of Criminal Possession of Marijuana, and on January 14, 2002, in the Criminal Court at Harris County, New York, for the offense of Possession of Marijuana, both offenses relating to a controlled substance, other than a single offense involving possession of one's own use of 30 grams or less of marijuana. (Id., Ex. H.)

On March 14, 2008, Petitioner, represented by counsel, moved to terminate the removal proceedings on the basis of collateral estoppel/res judicata. (Id., Ex. J.) In the motion, Petitioner argued that ICE should have litigated his two prior drug convictions in the first removal proceeding. His motion was denied by the IJ on April 14, 2008, holding that because ICE was unable to obtain Petitioner's conviction records prior to the termination of the prior proceedings, Petitioner would not be prejudiced by answering the consequences of his criminal record.[1] (Id., Ex. K.)

On August 11, 2008, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this court similar to the instant petition. See Victor v. Mukasey, et al., Civil Action No. 3:08-1501. On September 11, 2008, this court granted the petition to the extent that ICE was directed to conduct a bond hearing within thirty (30) days. (Id., Ex. L.) On October 8, 2008, the IJ conducted a bond

---

[1] The IJ did acknowledge, however, that both parties made good points for their respective positions and that the matter presented a "closer case than government counsel argues." (Doc. 1, Ex. K at 2.)

3

hearing, denying the bond request on the basis that Petitioner is subject to mandatory detention pursuant to section 236(c). (Id. at 4.) Petitioner contends that during the bond hearing, the IJ found that he was not a flight risk or a danger to society.

Apparently at some point thereafter, Petitioner sought the cancellation of removal. The court learned through a telephonic communication with ICE that on November 12, 2008, the IJ issued an Order granting cancellation of removal. In addition, the court was further informed that the ICE was appealing the order to the BIA. Petitioner seeks release pending a final decision in the removal proceedings.

## II.   **Discussion**

The apprehension and detention of aliens, pending removal decisions, are governed by the provisions by § 236 of the INA, 8 U.S.C. § 1226.  Under § 1226(a), the Attorney General may issue a warrant for arrest and detention of an alien, pending a decision on whether the alien is to be removed from the United States.  Although § 1226(a) permits discretionary release of aliens on bond, § 1226(c)(1) states that "The Attorney General shall take into custody any alien who ... (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B),(C), or (D) of this title." 8 U.S.C. § 1226(c)(1).

The United States Supreme Court held in Demore v. Kim, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution.  In Demore, a lawful

4

permanent resident filed a habeas petition challenging the no-bail provision of

§ 1226(c), pursuant to which he had been held for six months during the pendency of

removal proceedings against him.  The Supreme Court held that detention of lawful

permanent residents during removal proceedings is constitutionally permissible, even

when there has been no finding that they are unlikely to appear for their deportation

proceedings.  See id., 538 U.S. at 523-524.

The government takes the position that "[a]s an alien in removal proceedings

who has been convicted of an offense covered in §§ 237 (a)(2)(B)(i), Petitioner is

subject to mandatory detention pursuant to § 236(c) of the INA.  Although Petitioner

is well aware of the Demore Court's holding regarding the constitutionality of the

mandatory detention provision, he contends that the holding is limited.  He

specifically argues that the Demore Court decision was based on the assumption that

the detention would be for a brief period.  (Doc. 1, Pet. at 6.)

In support of his argument, Petitioner first cites to the case of Ly v. Hansen,

351 F.3d 263 (6th Cir. 2003), a case recently relied upon by the Honorable Thomas I.

Vanaskie in the case of Lawson v. Gerlinski, 332 F. Supp.2d 735, 744-46 (M.D. Pa.

2004).  The petitioner in Lawson, who had obtained a stay of removal while he was

litigating the enforceability of his removal order, contested his prolonged detention.

Judge Vanaskie found as follows:

> The fact of the removal order does not strip Lawson of his
> constitutionally protected interest in liberty.  See Ly v. Hansen, 351 F.3d

263, 269 (6th Cir. 2003). "The Supreme Court has repeatedly recognized that 'if an alien is a lawful permanent resident of the United States and remains physically present here, he is a person within the protection of the Fifth Amendment.'" Tineo v. Ashcroft, 350 F.3d 382, 398 (3d Cir. 2003). As recognized in Ly, the Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), "established that deportable aliens even those who had already been ordered removed, possess a substantive Fifth Amendment liberty interest, and that the interest was violated by indefinite detention." Ly, 351 F.3d at 269. Our Court of Appeals has recognized that even excludable aliens, i.e., non-lawful permanent residents, with criminal records are protected by the Due Process Clause when it comes to prolonged detention. Ngo, 192 F.3d at 398-99. The Supreme Court, in sustaining the authority of Congress to mandate detention of criminal aliens during the administrative removal proceedings stressed that such detention would be only "for the brief period necessary for their removal proceedings." Demore v. Kim, 538 U.S. 510, 513, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.

Lawson, 332 F. Supp. 2d at 744-46. The petitioner was ordered released subject to conditions of supervision. (Id. at 747.)

Also relied upon by Petitioner is the more recent case of Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007). In said matter, the Honorable Yvette Kane determined that extended confinement pursuant to a pre-final order constituted a violation of the petitioner's due process rights:

[A] careful reading of the Supreme Court's [Demore] decision reveals it to be not the sweeping pronouncement suggested by Respondents, but rather a narrower holding grounded in repeated reference to the

6

anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course. The emphasis in Demore on the anticipated limited duration of the detention period is unmistakable, and the Court explicitly anchored its holding by noting a "brief period," Demore, 538 U.S. at 513, 523, 123 S.Ct. 1708, of "temporary confinement," id. at 531, 123 S.Ct. 1708. Indeed, the references to the brevity and limited nature of confinement can be found throughout Demore. See id. at 513, 123 S.Ct. 1708 ("Congress ... may require that [criminal aliens] be detained for the brief period necessary for their removal proceedings."); id. at 523, 123 S.Ct. 1708 ("Respondent argued that the Government may . . . detain him for the brief period necessary for his removal proceedings."); id. at 526, 123 S.Ct. 1708 (noting the "Court's longstanding view that the Government may . . . detain deportable aliens during the limited period necessary for their removal proceedings"); id. at 529 n. 12, 123 S.Ct. 1708 (noting "the very limited time of the detention at stake")(emphasis added). Moreover, in upholding the constitutionality of § 236(c), the Supreme Court specifically referred to statistics demonstrating the typically brief period that pre-final order removal proceedings require and the attendant short periods of detention that are therefore typically imposed. Relying on statistics compiled by the Executive Office for Immigration Review, the Supreme Court noted that in 85% of cases in which aliens were detained pursuant to § 236(c), removal proceedings were completed within an average of 47 days, with a median of 30 days. Id. at 529, 123 S.Ct. 1708. Furthermore, the Court noted that even in the remaining 15% of cases, in which an alien appeals an Immigration Judge's ruling to the Board of Immigration Appeals, an appeal takes an average of four months, with a even shorter median time. Id. As the United States Court of Appeals for the Ninth Circuit recently commented, "[t]here is no indication anywhere in Demore that the Court would countenance an indefinite detention." Nadarajah v. Gonzales, 443 F.3d 1069, 1081 (9th Cir. 2006).

Accordingly, numerous courts that have confronted pre-final order detainees' challenges to their extended confinement have endeavored to apply the general rule announced in Demore to the specific facts of the habeas petitions presented to them where pre-final order detainees have been held in custody for one or more years while their removal proceedings wound their way through the administrative and appellate processes. Several courts have found that due process required that aliens subjected to lengthy mandatory detention be given bail hearings or

have otherwise ordered their release in lieu of a bail hearing.  For example, in Ly v. Hansen, 351 F.3d 263 (6ᵗʰ Cir. 2003), the Sixth Circuit found that following Demore the proper interpretation of § 236(c) was to "[construe] the pre-removal detention statute to include an implicit requirement that removal proceedings be concluded within a reasonable time, [thereby avoiding] the need to mandate the procedural protections that would be required to detain deportable aliens indefinitely." Id. at 270.  On this standard, the Sixth Circuit "affirm[ed] the grant of habeas corpus and the district court's finding that the incarceration of 18 months pending removal proceedings is unreasonable , [without requiring] the United States to hold bond hearings for every criminal alien detained under § 236." Id.  Although the Sixth Circuit declined to create a rigid guideline of what would constitute a reasonable or unreasonable length of pre-final order detention, the court emphasized that habeas relief should be available for aliens whose particular removal proceedings were taking an unusually long time to complete: "The INS may detain prima facie removable aliens for a time reasonably required to complete removal proceedings in a timely manner.  If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings." Id. at 268.

Subsequent to Ly, courts within and without the Sixth Circuit have found habeas relief to be warranted in cases where aliens have been subject to prolonged pre-final order detention under § 236(c).  See, e.g., Tijani v. Willis, 430 F.3d 1241, 1242 (9ᵗʰ Cir. 2005)(finding that the authority conferred by 8 U.S.C. § 1226(c) "[applies] to expedited removal of criminal aliens" and finding that alien's two-year and four month detention to be "not expeditious;" recognizing that further administrative and judicial review would take more than a year to complete; and ordering petitioner's release unless within 60 days the government provided petitioner with a bail hearing before an IJ with the authority to order his release unless the government established that petitioner was a flight risk or a danger to the community); Diomande v. Wrona, No. 05-73290, 2005 WL 3369498, *2-3, 2005 U.S. Dist. LEXIS 33795, *4-7 (E.D. Mich. Dec. 12, 2005)(granting habeas relief and ordering alien released on $10,000 bond where the petitioner had been detained in pre-final order proceedings for nearly two years and had recently been granted withholding of removal by an IJ that was under appeal at the BIA, where the court found it "more than possible, indeed certain, that this case will proceed through the circuitry of administrative and judicial

appeals for several additional months, and most likely, several years;"
where petitioner had a fiancé and daughter in close proximity; and where
the government had presented no evidence that petitioner posed a danger
to the community or a risk of flight); <u>Fuller v. Gonzales</u>, No. 3:04-CV-
2039, 2005 WL 818614, *5-6, 2005 U.S. Dist. LEXIS 5828, *14-17 (D.
Conn. April 8, 2005)(granting habeas petition and ordering government
to hold a prompt bond hearing where alien had been detained for more
than two years under § 236(c)); <u>see also</u> <u>Nadarajah v.Gonzales</u>, 443 F.3d
1069 (9th Cir. 2006)(in an action where the government sought to hold
an alien in detention pursuant to the general immigration detention
statute set forth at 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A), finding
that government was not empowered to detain aliens indefinitely and
concluding that alien's five-year detention had been unreasonable;
ordering petitioner's immediate release subject to conditions to be set by
a delegate of the Attorney General); <u>Parlak v. Baker</u>, 374 F. Supp. 2d
551, 561 (E.D. Mich. 2005)(ordering pre-final order detainee released
immediately for reasons other than the length of his eight-month
detention, but finding it appropriate to note [g]iven the legal intricacies
surrounding Petitioner's removal, it will very likely take years for a final
determination of Petitioner's status. It is certain that the removal
proceedings will be protracted as this case winds through the appellate
process. In determining whether Petitioner's detention is unreasonable,
the Court cannot ignore the likely future course of the case which shows
a real certainty that Petitioner is facing a significant period of detention
for an indeterminate period of time. This amounts to a violate of due
process under the circumstances.").

<u>Madrane</u>, 520 F. Supp. 2d at 664-666.

Recently, the Honorable Christopher C. Conner, convinced by the legal

precedents cited and analyses set forth in the <u>Lawson</u> and <u>Madrane</u> opinions found a

petitioner's continued detention pending the conclusion of removal proceedings to

violate due process and therefore be unconstitutional. <u>See</u> <u>Nunez-Pimentel v. U.S.</u>

<u>Dep't of Homeland Security Immigration Customs Enforcement, et al.</u>, Civil Action

No. 1:07-CV-1915 (M.D. Pa. June 27, 2008). In <u>Nunez-Pimentel</u>, petitioner had been

held in ICE custody in excess of three years while his removal proceedings ". . . wound their way through ICE's administrative courts to the United States Court of Appeals for the Third Circuit and back again to the administrative courts." Id. at 8. Judge Conner adopted the conclusion of Chief Judge Kane in the Madrane matter and rejected the "Respondent's inflexible position that Petitioner may be detained for as many years as it may take to obtain a final order regarding his removal simply on the basis of the mandatory language of § 236(c), particularly where the Supreme Court in Demore did not expressly contemplate the constitutionality of such protracted detention . . . ." Madrane, 520 F. Supp. 2d at 667.

This court is also in agreement with the line of reasoning set forth in the above cited cases, and finds that Petitioner's continued detention pending the conclusion of a maze of removal proceedings is in violation of his right to due process and is therefore unconstitutional.[2] Petitioner was originally taken into ICE custody on or about July 5, 2007. His removal proceedings proceeded through ICE resulting in the BIA affirming the IJ's decision to terminate the removal proceedings and an order being issued for Petitioner's release on January 31, 2008. He was never released, but rather, ICE issued a new NTA on February 6, 2008. Again, Petitioner challenged removal by moving to terminate proceedings on the basis of collateral estoppel/res

---

[2] It is noted that the United States Court of Appeals for the Third Circuit has not yet spoken on this issue.

10

judicata. Although his motion was denied by the IJ, he thereafter filed an application for cancellation of removal and was successful. On November 12, 2008, the IJ granted relief on his petition. However, the pre-final order proceedings are far from over. The court learned that the government is pursing an appeal with the BIA with regard to the IJ's decision. According to ICE, the proceedings could take months to resolve, particularly in light of the upcoming holidays.

Given the past procedural history of this case, it is almost certain that due to the future course of this case, including the current appellate proceedings, Petitioner faces further detention for an indeterminate period of time. He has already been held in continuous pre-final removal order ICE custody since July of 2007. While he has successfully challenged his removal at the IJ level twice, he remains tangled in administrative pre-final order proceedings with no certain end in sight. While Respondents rely exclusively on the mandatory detention authorized by section 236(c) in justifying Petitioner's continued detention, this court agrees with the conclusion of Chief Judge Kane in the Madrane that Demore did not expressly contemplate the constitutionality of such lengthy pre-removal mandatory detention. See Madrane, 520 F. Supp. 2d at 667. Further, Petitioner states that he has numerous immediate family members who are United States citizens, including his fiancé, and that he will reside in New York should his release be granted by this court. In addition, although the record reveals that Petitioner has been denied bond, the

government has presented no evidence that Petitioner poses a danger to the community or a risk of flight. Accordingly, for all of these reasons, the court will grant the petition for writ of habeas corpus.[3]

An appropriate Order is attached.

---

[3] Consequently, Petitioner's "Motion for Order for Immediate Release" filed on November 19, 2008 (Doc. 10) will denied as moot.